**Motion Return Date/time: TBD by the Court, if required**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LOAAI AL-AKWAA,<br><br><br>Debtor(s) | Case No: 17-10892-smb |
| SAMA'A AL-HAMDANI<br><br>      Plaintiff,<br>-against-<br><br><br>LOAAI AL-AKWAA<br><br>      Defendant. | Adv. Proc No.: 17-01092-smb |

**AMENDED DEBTOR'S MOTION FOR AN ORDER TO VACATE THE ORDER
AND JUDGMENT DATED SEPTEMBER 12, 2017**

TO:    THE HONORABLE JUDGE STUART M. BERNSTEIN,
        UNITED STATES BANKRUPTCY JUDGE:

Loaai Al-Akwaa (hereinafter the "Debtor"), by his attorneys the Law Office of Julio E. Portilla, P.C., hereby submits this Motion pursuant to Local Bankruptcy Rule 9023-1 and Fed. R. Civ. P. 60(b)(6) to vacate this Court's Order and Judgment pursuant to 9020-1(a) declaring that a judgment entered against the Debtor by the Superior Court of the District of Columbia, Family Court, Domestic Relations Branch on April 11, 2017 in the amount of $30,000.00 was not dischargeable. *See* Judgment attached hereto as *Exhibit "A"*. In support of the Motion, the Debtor respectfully represents as follows:

## RELATED BACKGROUND

1. On April 4, 2017 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2. Deborah J. Piazza ("the Trustee") was the standing Chapter 7 Trustee appointed pursuant to 11 U.S.C. §1302.

3. In his schedules, the Debtor listed Sama'a Al-Hamdani, the Debtor's ex-wife (hereinafter the "Plaintiff"), as a creditor in connection with a $30,000.00 dowry (sadaq). *See* certificate of marriage attached hereto as *Exhibit "B"*.

4. On April 11, 2017, subsequent to the Debtor's bankruptcy filing, the Superior Court of the District of Columbia, Family Court, Domestic Relations Branch entered a judgment in favor of Plaintiff in the sum of $30,000.00 pursuant to the Judgment of Absolute Divorce dated October 19, 2015, which declared the dowry enforceable pursuant to the principle of contract law. *See* Order dated April 11, 2017 attached hereto as *Exhibit "C"* and Judgment of Divorce dated October 19, 2015 attached hereto as *Exhibit "D"*.

5. On May 11, 2017 the Debtor appeared for his § 341(a) Meeting of Creditors and was examined by the Trustee.

6. On May 12, 2017, the Trustee filed her Chapter 7 Trustee's Report of No Distribution. *See* ECF Dkt. No. 8.

7. On June 27, 2017, Sama'a Al-Hamdani, the Debtor's ex-wife commenced the instant adversary proceeding pursuant to 11 U.S.C. § 523(a)(15) alleging that a $30,000.00 Dowry (the "Dowry") that entered into prior to the parties' marriage was not dischargeable.

8. On August 15, 2017, an Answer was interposed by the Debtor.

## LEGAL AUTHORITY

9. Federal Rule of Civil Procedure 55(c) 6 provides that "[f]or good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Here, a final judgment was entered pursuant to Rule 9020-1(a) of the Local Bankruptcy Rules of this Court declaring that a judgment against the Debtor by the Superior Court of the District of Columbia, Family Court, Domestic Relations Branch on April 11, 2017 in the sum of $30,000.00 was not dischargeable.

10. Rule 60(b)(1) of the Federal Rules of Civil Procedure provides, in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ...

11. In general, a motion to vacate a default judgment is addressed to the sound discretion of the court. *See Brien v. Kullman Industries, Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995). In considering a motion to vacate a default judgment pursuant to Rule 60(b)(1), "courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied." *Id*. In this Circuit, courts consider the following criteria: (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted. *Id*; *see also American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996). The term "willful" in the context of a default refers to conduct that is more than merely negligent or careless. *See American Alliance*, 92 F.3d at 61 (default due to filing mistake by defendant's in-house counsel's clerk determined not to be willful). In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively,

but he must present evidence of facts that, "if proven at trial, would constitute a complete defense." *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (quoting Enron Oil Corp. v. *Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993).

12. Moreover, because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. Likewise, the criteria of Rule 60(b) should be construed generously in favor of the defaulting party. See American Alliance, 92 F.3d at 58 (finding "'excusable neglect' to be construed generously in the context of an attempt to vacate a default judgment"); see also *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

**A. Excusable Neglect**

13. Here, Debtor's nonappearance was not willful and constitutes excusable neglect. Debtor's counsel simply failed to properly calendar the scheduled pre-trial conference after filing his answer. The United States Supreme Court has established a four-part balancing test for determining whether there had been "excusable neglect" within the meaning of Fed. R. Bankr. P. 9006(b)(1). See *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74, 1993 U.S. LEXIS 2402, 61 U.S.L.W. 4263, 25 Fed. R. Serv. 3d (Callaghan) 401, Bankr. L. Rep. (CCH) P75,157A, 28 Collier Bankr. Cas. 2d (MB) 267, 24 Bankr. Ct. Dec. 63, 93 Cal. Daily Op. Service 2096, 93 Daily Journal DAR 3705, 7 Fla. L. Weekly Fed. S 101.

14. The four factors include: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith.

15. The determination of "what sorts of neglect will be considered 'excusable' . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer,* 507 U.S. at 395; see also *Lemoge v. United States*, 587 F.3d 1188, 1195 (9th Cir. 2009) (stating that the four enumerated Pioneer factors are "'not an exclusive list'") (quoting *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (per curiam)).

16. Moreover, the Supreme Court has made clear that "excusable neglect . . . is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Pioneer,* 507 U.S. at 391. On several occasions, the Ninth Circuit has found excusable neglect for delays caused by the negligence and carelessness of experienced law firms and attorneys. See, e.g., *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262 (9th Cir. 2010) (characterizing an attorney's "calendaring mistake caused by the failure to apply a clear local rule" as a weak justification for the delay, but nonetheless finding excusable neglect).

17. Here, Debtor's nonappearance is regrettably attributable to carelessness by properly calendaring the pre-trial conference date and constitutes excusable neglect and the Debtor should not be penalized and be allowed to adjudicate this adversary proceeding on its merits. As a result, Debtor's default resulted from negligence and carelessness, and not from deviousness or willfulness.

I. **Prejudice**

18. The first Pioneer factor, prejudice to the opposing party, "requires greater harm than simply that relief would delay resolution of the case." *Lemoge,* 587 F.3d at 1196 (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001); see also *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224–25 (9th Cir. 2000) (concluding that the loss of a "quick victory" is insufficient prejudice to deny relief under Rule 60(b)). Prejudice to the movant,

although not an explicit Pioneer factor, can also be considered in appropriate circumstances. *Lemoge*, 587 F.3d at 1195; see also *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) (*citing Lemoge*, 587 F.3d at 1195). Here, Plaintiff will identify any prejudice she would suffer from setting aside the judgment, and just merely mean that she "would have lost a quick victory," which is not sufficiently prejudicial to deny relief. See *Bateman*, 231 F.3d at 1225; see also *Lemoge*, 587 F.3d at 1196 (rejecting the defendant's assertion that it would be prejudiced if the plaintiffs' Rule 60(b) motion were granted because it relied on the dismissal of the lawsuit in settling a separate action).

**II.    Length of the Delay**

19.    As to the second factor, the length of the delay, Rule 60(c) requires that a Rule 60(b) motion be made "within a reasonable time" and "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). "'What constitutes "reasonable time" depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties." *Lemoge*, 587 F.3d at 1196–97. Here, the motion is being within 14-days of its entry, as a result the length of the delay is indeed reasonable and will not prejudice the Plaintiff.

**B. Meritorious Defense**

20.    To determine whether the Claim is nondischargeable and entitled to priority status, the Court must analyze §§ 101, 507(a), 523, 727, and 1328, and the changes to those sections made or impacted by the substantial amendments to the Bankruptcy Code enacted by Congress under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). BAPCPA introduced significant statutory changes regarding the status of debts

and obligations arising from the marital relationship, and applied to cases commenced after October 17, 2005. These amendments included adding a definition of a DSO in § 101(14A), granting a first priority administrative status to DSOs under § 507(a)(1), and modifying § 523(a) to "significantly limit" a debtor's ability to discharge debts related to a matrimonial action. See In re Schenkein, 2010 WL 3219464, at *4 (Bankr. S.D.N.Y. Aug. 9, 2010).

21. Section 523(a)(5) creates an exception from discharge for any debt "for a domestic support obligation," and § 523(a)(15) creates an exception from discharge for any debt to a spouse, former spouse, or child of the debtor that is "incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record" and which is in the nature of a DSO. Here, the claimed debt does not fall within the definition of a DSO.

22. Under federal bankruptcy law, as embodied in § 101(14A), a nondischargeable DSO claim must be:

    a. "owed to or recoverable by (i) a spouse, former spouse, or child of the debtor..";

    b. "in the nature of alimony, maintenance, or support";

    c. "established . . . by reason of applicable provisions of (i) a separation agreement, divorce decree, or property settlement agreement; (ii) an order of a court of record; or (iii) a determination made in accordance with applicable nonbankruptcy law"; and

    d. "not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily ..."

23. Here, the dowry is not "debt in the nature of alimony, maintenance, or support, which is owed to or recoverable by "a spouse, former spouse, or child of the debtor". The Superior Court of the District of Columbia, Family Court, Domestic Relations Branch did not classify the dowry as support in its Judgment and neither should this Court. In fact, the Superior Court of the District of Columbia, Family Court, Domestic Relations Branch applied basic principles of contract law.

24. Moreover, under Islamic law a dowry is considered an unsecured debt. "The wife's claim for unpaid portion of her dower is legally considered an unsecured debt ranking equally with other unsecured debts due from her husband or after his death, from his estate." *See* John L. Esposito, Women in Muslim Family Law, second edition at 24 (2001) paragraph entitled Dower Rights attached hereto as *Exhibit "E"*.

25. Under Islamic law maintenance for an ex-spouse is called "nafagah". There is no mention of "nafagah" in the divorce proceeding or the state court proceedings. Attached hereto is the relevant portion of John L. Esposito, Women in Muslim Family Law, second edition at 24 (2001), paragraph entitled Dower Rights entitled Maintenance Rights attached hereto as Exhibit "E".

## CONCLUSION

26. For the reasons set forth herein, the Debtor requests that this Court vacate and set aside the Order and Judgment pursuant to 9020-1(a) declaring that a judgment entered against the Debtor by the Superior Court of the District of Columbia, Family Court, Domestic Relations Branch on April 11, 2017 in the amount of $30,000.00 was not dischargeable.

**WHEREFORE**, Debtor respectfully requests that the instant motion be granted in its entirety; and (ii) such other and further relief as this Court shall deem just and proper.

Dated: New York, New York
      October 11, 2017

                              **LAW OFFICE OF JULIO E. PORTILLA, P.C.**
                              *Attorneys for LOAAI AL-AKWAA*
                              *By:*    */s/ Julio E. Portilla*
                              Julio E. Portilla, Esq.
                              Law Office of Julio E. Portilla, P.C.
                              555 Fifth Avenue, 17th Floor
                              New York, NY 10017
                              Tel: (212) 365-0292
                              Fax: (212) 365-4417