UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LOAAI AL-AKWAA,<br><br><br>                              Debtor(s) | Case No: 17-10892-smb |
| SAMA'A AL-HAMDANI<br><br>            Plaintiff,<br>    -against-<br><br><br>LOAAI AL-AKWAA<br><br>            Defendant. | Adv. Proc No.: 17-01092-smb |

**DEBTOR'S OPPOSITION TO PLAINTIFF SAMA'A AL-HAMDANI
MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO
<u>FED. R. BANKR. P. 7012 AND FED. R. CIV. 12(c)</u>**

TO:   THE HONORABLE JUDGE STUART M. BERNSTEIN,
      UNITED STATES BANKRUPTCY JUDGE:

Loaai Al-Akwaa (hereinafter the "Debtor"), by and through his attorneys, the Law Office of Julio E. Portilla, P.C., hereby responds in opposition to plaintiff Sama'a Al-Hamdani's ("Plaintiff") Motion for Judgment on the Pleadings pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ, 12(c).

**RELATED BACKGROUND**

1.     Plaintiff and Defendant were legally married in Arlington, Virginia on August 5, 2010.

2. Approximately 2.5 years later, on February 5, 2013 and already being legally married, the parties had an Islamic marriage ceremony, in the accordance with Islamic custom. The Certificate of Marriage from the Islamic Center included a $30,000.00 "dowry". *See* Islamic Marriage Certificate attached hereto as **Exhibit "A"**.

3. Five days later, on February 10, 2013, Plaintiff separated from Defendant. On July 6, 2015, Plaintiff commenced divorce proceedings with the Superior Court of the District of Columbia, Family Court, Domestic Relations Branch (the "D.C. Court").

4. On October 19, 2015, the D.C. Court issued a Judgment of Absolute Divorce. *See* Judgment of Divorce attached hereto as **Exhibit "B"**. The Judgment of Divorce also held that the dowry complies with principles of contract law and is therefore an enforceable "contract" between the parties. *Id.*

5. At the time, Defendant was a freelance consultant and actor earning $2,000.00 per month. Thus, Defendant could not afford to pay his creditors including Plaintiff's dowry. Subsequently, Plaintiff filed a motion for contempt (the "Contempt Motion") in the D.C. Court to compel the payment of the $30,000.00 dowry. A hearing was set for April 11, 2017.

6. On April 4, 2017 (the "Petition Date"), Defendant filed a voluntary petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

7. Deborah J. Piazza ("the Trustee") was the standing Chapter 7 Trustee appointed pursuant to 11 U.S.C. §1302.

8. In his schedules, Defendant listed Plaintiff as a creditor in the sum of $30,000.00.

9.     On April 11, 2017, Defendant presented proof of his pending bankruptcy, as a result, the D.C. Court denied Plaintiff's Contempt Motion and reduced the dowry to a civil judgment.  *See* Order dated April 11, 2017 attached hereto as **Exhibit "C".**

10.    On May 11, 2017 the Debtor appeared for his § 341(a) Meeting of Creditors and was examined by the Trustee.

11.    On May 12, 2017, the Trustee filed her Chapter 7 Trustee's Report of No Distribution.  *See* ECF Dkt. No. 8.

12.    On June 27, 2017, Plaintiff commenced the instant adversary proceeding pursuant to 11 U.S.C. § 523(a)(15) alleging that the $30,000.00 dowry was not dischargeable on the grounds that Defendant's obligation is a "domestic support obligation".  *See* "Complaint" attached hereto as **Exhibit "D"**.

13.    On August 15, 2017, an Answer was interposed by the Debtor.  *See* Answer attached hereto as **Exhibit "E"**.

## STANDARD OF REVIEW

14.    Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Motions for judgment on the pleadings are governed by the same standards applicable to Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted.

15.    While Fed. R. Civ. P. 12(c) motions are usually filed by defendants seeking dismissal of a plaintiff's complaint, they may be filed by a plaintiff seeking judgment as a matter of law for the relief requested in the complaint. *See* Rule 12(c) ("a party" may move for judgment on pleadings). When a plaintiff is the moving party, "the plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat

recovery." <u>See</u> 5C Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1368 & n. 20 (3d ed. 2009).

16. On a Fed. R. Civ. P. 12(c) motion, "a court considers: The complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." <u>See</u> *New York State Catholic Health Plan, Inc*. v. *Acad. O & P Assoc*s., 312 F.R.D. 278, 2015 U.S. Dist. LEXIS 169526.

## **LEGAL ARGUMENT**

### **THE $30,000.00 DOWRY AND CIVIL JUDGMENT ISSUED BY THE D.C. COURT IS NOT A DOMESTIC SUPPORT OBLIGATION OWED TO THE PLAINTIFF, SAMA'A AL-HAMDANI, THUS IT IS DISCHARGEABLE.**

17. 11 U.S.C. Section 101(14A) provides:

The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is

  (A) "owed to or recoverable by—
   (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

   (ii) a governmental unit

  (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

  (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

   (iii) a separation agreement, divorce decree, or property settlement agreement; (ii) an order of a court of record; or
   (iv) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

>    (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

A. <u>The Dowry Is An Enforceable Contract but it does not Fall within the definition of a "Domestic Support Obligation</u>

18.     Section 523(a)(5) creates an exception from discharge for any debt "for a domestic support obligation," and § 523(a)(15) creates an exception from discharge for any debt to a spouse, former spouse, or child of the debtor that is "incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record" and which is in the nature of a DSO but does not fall within the definition of a DSO.

19.     Section 523(a)(15) also provides that a debt to a "former spouse … that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement" is not dischargeable in bankruptcy. In New York, the courts have held that a Dowry is an enforceable contract. <u>See</u> *Aziz v Aziz, 127 Misc 2d 1013, 488 N.Y.S.2d 123 [Sup Ct, Queens Co., 1985]; S.B. v W.A.,38 Misc 3d 780, 959 N.Y.S.2d 802 [Sup Ct, West. Co., 2012].* A however does not fall w within the definition of a "Domestic Support Obligation".

20.     Here, the "contract", as the debt at issue was defined by the Judgment of Divorce, between the parties, was not incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. Therefore, it is dischargeable.

**DOWRYS ARE NOT SYNONYMOUS WITH PRENUPTIAL AGREEMENTS**

21.     As Islamic marriage itself, or *nikah*, is negotiated by the groom and the bride's guardian, or *wali*, who is usually her father, grandfather, or uncle. *Judith E. Tucker, In the House of the Law 5 (1998),* at 46–47; <u>*also*</u> <u>*see*</u> David Pearl, A Textbook on Muslim Law 44 (1979). The

actual marriage contract includes the names and lineages of the bride and groom, the names of two witnesses who are chosen to swear that both parties consent to the marriage, and the details of the dowry. Id.

22. A dowry arising out of an Islamic marriage is not synonymous with prenuptial agreements. A dowry by religious tradition and legal definition, are far different both in purpose and effect. Unlike a dowry, prenuptial agreements do not provide for a sum of money solely to the wife in order to compensate for inequities in marital law. Rather, prenuptial agreement sees either to protect the separate character of property owned before marriage or to define the character of any property acquired during the course of the marriage. *See* Dennis Wasser, Prenuptial Disagreements, 23 L.A. Law. 26, 30 (Dec. 2000). In fact, the prenuptial evolved to protect assets from a spouse and not to provide for her.

23. In contrast, under Islamic tradition, a dowry is created to protect women from abandonment, ameliorate the harsh effects of unilateral divorce, and adhere to the traditions of the Koran. Further, a prenuptial agreement is gender-neutral—both men and women can contract around community property laws to protect their assets—while the "mahr", "dowry" or "sadaq" is gender-specific by definition and design, and thus not comparable.

24. An example of an American court recognizing this distinction is *In re Marriage of Shaban*, in which the California Court of Appeal carefully considered whether a couple's *mahr* was a premarital agreement. *See* 105 Cal. Rptr. 2d at 867–69. The court found that the document was merely a marriage certificate, not a prenuptial, because it provided more information about the parties to the wedding, including the address and descriptions of the witnesses, than it did about any agreement between the two parties as to property dissolution in an American court. *See* Id. at 869. A New York court reached the same conclusion, finding that

"the [wedding contract] simply stated where the marriage took place, who . . . the participants [were,] and who officiated the ceremony." See Habibi-Fahnrich v. Fahnrich, No. 46186/93, 1995 WL 507388, at 1-3 (N.Y. Sup. Ct. July 10, 1995) (holding that a *mahr* provision was unenforceable in part because it told more information about the couple than it did about the agreement; the small portion relating to the *mahr* did not signify an agreement by itself).

25. Importantly, as evidenced by these cases, the parties who marry pursuant to Islamic custom and contract do not contemplate the assets of each party. Because Islamic law requires that both parties retain their own assets before, during, and after the marriage, consideration of divvying their assets is a non-issue beyond the agreed-upon dower. See Shaban, 105 Cal. Rptr. 2d at 866–67. In contrast, the sole point of the prenuptial agreement is to contemplate the character of certain assets and provide for their ownership upon divorce.

26. The importance of determining whether a "dowry" or "mahr" or "sadaq" agreements are identical to prenuptials or are simply elements of the Islamic marriage contract that cannot be overlooked.

i. <u>The Parties' "Dowry" cannot be enforced as a premarital agreement because the parties made the agreement after already being married</u>

27. Plaintiff and Defendant were legally married in Arlington, Virginia on August 5, 2010. Approximately 2.5 years later, on February 5, 2013 and after already being married, the parties had an Islamic marriage ceremony, in the accordance with Islamic custom.

28. A premarital agreement is "an agreement between prospective spouses made in contemplation of marriage." It is undisputed that the parties were married in a civil ceremony on August 5, 2010, approximately 2.5 years *before* they signed the Certificate of Marriage from the Islamic Center that includes a $30,000.00 dowry.

29. If the legal requirements for a ceremonial marriage are satisfied, New York does not distinguish between civil and religious marriage ceremonies. <u>See</u> <u>Persad v. Balram</u>, 187 Misc. 2d 711, 724 N.Y.S.2d 560, 2001 N.Y. Misc. LEXIS 107; <u>see also</u> N.Y. Dom. Rel. Law §25.

30. As a result, it is the parties' marital status, rather than a specific type of ceremony, that is significant. Because the parties participated in a valid civil wedding ceremony 2.5 years *before* they signed the Certificate of Marriage from the Islamic Center, they were already spouses, not "prospective spouses," and their agreement could not have been made "in contemplation of marriage."

ii. <u>The "Dowry" cannot be enforced as a post-marital agreement because the agreement is to vague and uncertain to enforce</u>

31. In addition to the foregoing, the Parties' dowry cannot be enforced as a post-marital agreement. The terms of the dowry are too vague and uncertain to be enforced, which would prevent enforcing the agreement either as a premarital or postmarital agreement.

32. "[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. *See R/S Associates v. New York Job Development Authority*, 98 NY2d 29, 771 N.E.2d 240, 744 N.Y.S.2d 358 (2002); <u>see also</u> *Greenfield v. Philles Records, Inc.*, 98 NY2d 562, 780 N.E.2d 166, 750 N.Y.S.2d 565; *Reiss v. Financial Performance Corporation*, 97 NY2d 195, 764 N.E.2d 958, 738 N.Y.S.2d 658 (2001]). .

33. "[E]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face". <u>See</u> *Reiss v. Financial Performance Corporation*, 97 NY2d at 199, *quoting W.W.W. Associates v*

*Giancontieri*, 77 NY2d 157, 163, 566 N.E.2d 639, 565 N.Y.S.2d 440 [1990]), and extrinsic evidence of the parties' intent may only be considered if the agreement is ambiguous. <u>See</u> *Greenfield v. Philles Records, Inc.*, 98 NY2d 562, 780 N.E.2d 166, 750 N.Y.S.2d 565, supra. Whether or not an agreement is ambiguous is an issue of law for the court to determine. Id.; <u>see also</u> *W.W.W. Associates v. Giancontieri*, 77 NY2d 157, 566 N.E.2d 639, 565 N.Y.S.2d 440, supra. The rules of contract interpretation do not differ for agreements entered into as part of a divorce. *Rainbow v. Swisher*, 72 NY2d 106, 527 N.E.2d 258, 531 N.Y.S.2d 775 (1988).

34.    Hence, in order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. This rule is designed to ensure that all parties to the contract understand and agree to the essential terms. The parties' dowry failed in this regard thus it cannot be enforced as a post-marital agreement because the agreement is too vague and uncertain.

35.    Moreover, there is no Post- BAPCPA Second Circuit Case Law applying §§ 101(14A) or 523(A) to determine the priority status of a "dowry" incurred pursuant to Islamic Custom.

36.    Nonetheless, Courts in other circuits have held that a dowry is not "debt in the nature of alimony, maintenance, or support, which is owed to or recoverable by "a spouse, former spouse, or child of the debtor". <u>See</u> *In re Muhammad*, United States Bankruptcy Court for the Middle District of Florida, Orlando Division, Case No.: 6:15-bk-10028-CCJ, Chapter 13. In re Muhammad, the Court held that the "mahr" executed by the parties may be discharged in the Plaintiff's Chapter 13 case.

37. Here, the Superior Court of the District of Columbia, Family Court, Domestic Relations Branch did not classify the dowry as support in its judgment and neither should this court. Moreover, under Islamic law a dowry (sadaq) is considered an unsecured debt. "The wife's claim for unpaid portion of her dower is legally considered an unsecured debt ranking equally with other unsecured debts due from her husband or after his death, from his estate." *See* John L. Esposito, Women in Muslim Family Law, second edition at 24 (2001) paragraph entitled Dower Rights attached hereto as **Exhibit "F"**. Under Islamic law maintenance for an ex-spouse is called "nafagah". There is no mention of "nafagah" in the divorce judgment or the state court proceedings. Id.

## CONCLUSION

38. For the reasons set forth herein, Plaintiff's motion should be denied in its entirety

**WHEREFORE**, Defendant respectfully requests that Plaintiff's motion be denied in its entirety; and (ii) such other and further relief as this Court shall deem just and proper.

Dated: New York, New York
April 19, 2018

                                          **LAW OFFICE OF JULIO E. PORTILLA, P.C.**
                                          *Attorneys for LOAAI AL-AKWAA*
                                          *By:     /s/ Julio E. Portilla*
                                          Julio E. Portilla, Esq.
                                          Law Office of Julio E. Portilla, P.C.
                                          555 Fifth Avenue, 17th Floor
                                          New York, NY 10017
                                          Tel: (212) 365-0292
                                          Fax: (2120 365-0292